Slip Op. 22-1

## UNITED STATES COURT OF INTERNATIONAL TRADE

HUSTEEL CO., LTD.,

     Plaintiff,

and

NEXTEEL CO., LTD. ET AL.,

     Consolidated Plaintiffs,

v.

UNITED STATES

     Defendant,

and

MAVERICK TUBE CORPORATION ET AL.,

     Defendant-Intervenors and Consolidated Defendant-Intervenors.

Before: Claire R. Kelly, Judge

Consol. Court No. 19-00112

## <u>OPINION</u>

[Sustaining the U.S. Department of Commerce's second remand redetermination in the 2016–17 administrative review of the antidumping duty order on welded line pipe from the Republic of Korea.]

Dated: January 3, 2022

J. David Park, Henry D. Almond, Daniel R. Wilson, Leslie C. Bailey, Kang Woo Lee, Arnold & Porter Kaye Scholer LLP, of Washington, D.C., for consolidated plaintiff NEXTEEL Co., Ltd.

L. Misha Preheim, Assistant Director, and Robert R. Kiepura, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  Also on the brief were Brian M. Boynton, Acting Assistant Attorney General, and Jeanne E. Davidson, Director.  Of Counsel on the brief was Reza Karamloo, Senior Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Gregory J. Spak, Frank J. Schweitzer, Kristina Zissis, and Matthew W. Solomon, White & Case LLP, of Washington, D.C., for defendant-intervenors Maverick Tube Corporation and IPSCO Tubulars Inc.

   Kelly, Judge:   Before the court is the U.S. Department of Commerce's ("Commerce") second remand redetermination in the 2016–17 administrative review of the antidumping duty ("ADD") order on welded line pipe ("WLP") from the Republic of Korea ("Korea") filed pursuant to the court's order in Husteel Co. v. United States, 45 CIT __, 520 F. Supp. 3d 1296 (2021) ("Husteel II").   See Final Results of Redetermination Pursuant to Ct. Remand, Sept. 2, 2021, ECF No. 113 ("Second Remand Results").  In Husteel II, the court remanded for a second time Commerce's determination to calculate consolidated plaintiff NEXTEEL Co., Ltd.'s ("NEXTEEL") "costs of non-prime products based on their resale value and [then] reallocate[] the difference between the resale value and the actual costs of producing non-prime products to the costs of prime products" in calculating NEXTEEL's constructed value. Husteel II, 45 CIT at __, 520 F. Supp. 3d at 1309; see also Husteel Co. v. United States, 44 CIT __, __, 471 F. Supp. 3d 1349, 1366–67 (2020) ("Husteel I"); [WLP] from [Korea], 84 Fed. Reg. 27,762 (Dep't Commerce June 14, 2019) (final results of [ADD] admin. review and final determination of no shipments; 2016–17) ("Final Results") as amended by 84 Fed. Reg. 35,371 (Dep't Commerce July 23, 2019) (amended final

results of [ADD] admin. review; 2016–17) ("Amended Final Results") and accompanying Issues and Decision Memo., A-580-876, (June 7, 2019), ECF No. 36-5 ("Final Decision Memo"); Final Results of Redetermination Pursuant to Ct. Remand, Jan. 8, 2021, ECF No. 84 ("First Remand Results"), as amended by, Corrected Final Results of Redetermination Pursuant to Ct. Remand, Jan. 22, 2021, ECF No. 88 ("Amended First Remand Results").[1]

In its Second Remand Results, Commerce uses the actual costs for NEXTEEL's non-prime products as reflected in NEXTEEL's accounting to calculate NEXTEEL's constructed value. Second Remand Results at 2. Defendant-intervenors Maverick Tube Corporation and IPSCO Tubulars Inc. (collectively, "Tenaris USA") oppose the Second Remand Results, arguing that Commerce should have continued to adjust NEXTEEL's reported costs for non-prime products based on their resale value, and that Commerce failed to explain or justify its reliance on NEXTEEL's reported costs. Cmts. of Def.-Intrnvnrs [Tenaris USA] on Commerce's [Second Remand Results], 3–4, Oct. 4, 2021, ECF No. 116 ("Tenaris Br."). Defendant United States and NEXTEEL filed briefs in support of the Second Remand Results. See Def.'s Resp. to Cmts. on [Second Remand Results], 4–6, Nov. 3, 2021, ECF No. 120 ("Def. Br."); [NEXTEEL's] Cmts. on [Second Remand Results], 1, Nov. 3, 2021, ECF 121 ("Pl. Br."). No other

---

[1] In the Amended First Remand Results, Commerce corrected an error in its calculation of NEXTEEL's constructed value profit margin and selling expenses; however, the Amended First Remand Results did not change the analysis or methodology set forth in the First Remand Results. Amended First Remand Results.

party submitted comments on the <u>Second Remand Results</u>.  For the following reasons,

the court sustains Commerce's <u>Second Remand Results</u>.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its

previous opinions ordering remands to Commerce, and now recounts only those facts

relevant to the court's review of the <u>Second Remand Results</u>.  <u>See</u> <u>Husteel I</u>, 44 CIT

at __, 471 F. Supp. 3d at 1356–59; <u>Husteel II</u>, 45 CIT at __, 520 F. Supp. 3d at 1300–

04.

On June 14, 2019, Commerce issued its <u>Final Results</u>[2] in which it, inter alia,

adjusted NEXTEEL's costs for non-prime products based on the non-prime products'

estimated sale price because NEXTEEL reported that it was unable to sell non-prime

products for use in the same applications or for the same prices as prime products.

<u>See</u> Final Decision Memo at 42–43.  In <u>Husteel I</u>, the court remanded Commerce's

determination to adjust NEXTEEL's non-prime costs for further explanation of

Commerce's practice and how the adjustment of NEXTEEL's costs accorded with that

practice.  <u>Husteel I</u>, 44 CIT at __, 471 F. Supp. 3d at 1367.  Specifically, the court

determined that Commerce failed to sufficiently explain whether NEXTEEL's non-

prime product was still in scope and that Commerce failed to consider how costs

incurred for the production and sale of non-prime products were reported in

---

[2] In the <u>Amended Final Results</u>, Commerce corrected two ministerial errors in the
<u>Final Results</u> that are not relevant to this decision.  <u>See</u> <u>Amended Final Results</u>, 84
Fed. Reg. at 35,371.

NEXTEEL's books and records.  Id.  In its First Remand Results, Commerce continued to adjust NEXTEEL's non-prime costs based on the non-prime products' sale value and apply the difference to NEXTEEL's prime products.  First Remand Results at 9–13, 33–36.

In Husteel II, the court remanded Commerce's decision in the First Remand Results to continue adjusting NEXTEEL's non-prime costs based on the non-prime products' sale value and to apply the difference to the cost of NEXTEEL's prime products.  Husteel II, 45 CIT at __, 520 F. Supp. 3d at 1308–09.  The court held that although Commerce had sufficiently explained how its methodology was applied to NEXTEEL's non-prime costs, Commerce failed to explain how that methodology comported with the U.S. Court of Appeals for the Federal Circuit's ("Court of Appeals") decision in Dillinger France S.A. v. United States, 981 F.3d 1318 (Fed. Cir. 2020).  Id.  Specifically, in Husteel II, the court characterized Dillinger as requiring "that Commerce must calculate constructed value based on the actual costs incurred in the production of prime and non-prime products."  Id. at 1309; see also Dillinger, 981 F.3d at 1321–24.  Thus, Commerce needed to explain how adjusting non-prime costs based on the estimated sale value reasonably reflected NEXTEEL's actual costs.

On remand from Husteel II, Commerce now revises its calculation of NEXTEEL's constructed value to use NEXTEEL's actual costs for non-prime product as reflected in NEXTEEL's books and records.  Second Remand Results at 5.  Tenaris USA is the only party that objects to the Second Remand Results.  See Tenaris Br.;

Pl. Br.; Def. Br.  Tenaris USA argues that Commerce's methodology as set forth in the <u>First Remand Results</u> fully comported with <u>Dillinger</u> and, on remand, Commerce only needed to provide an explanation of how the methodology complied with the statutory requirements as interpreted by the Court of Appeals.  Tenaris Br. at 5–8. Tenaris USA further argues that Commerce's determination in the <u>Second Remand Results</u> to rely on NEXTEEL's actual costs for non-prime products as reflected in NEXTEEL's books and records was inconsistent with <u>Dillinger</u> because NEXTEEL's reported costs allegedly "d[o] not 'reasonably reflect' the costs of production and sale of the merchandise," and <u>Dillinger</u> does not require Commerce to "automatically" use a respondent's reported costs in such circumstances.  <u>Id.</u> at 9.  Finally, Tenaris USA asserts that Commerce's decision is not supported by record evidence.  <u>Id.</u> at 10. NEXTEEL contends that Commerce's <u>Second Remand Results</u> comply with <u>Husteel II</u> and <u>Dillinger</u> in that Commerce uses NEXTEEL's actual costs of production for non-prime products, which <u>Dillinger</u> requires.  Pl. Br. at 1–2.  NEXTEEL further argues that Tenaris USA misinterprets the import of <u>Dillinger</u>, which NEXTEEL asserts held that Commerce must use actual costs for non-prime products.  <u>Id.</u> at 2–3.  NEXTEEL also argues that Tenaris USA improperly seeks a further review of the <u>Final Results</u> and the <u>First Remand Results</u> as opposed to a review of the <u>Second Remand Results</u>.  <u>Id.</u> at 3–4.  Defendant asserts that Commerce's <u>Second Remand Results</u> are consistent with <u>Husteel II</u> and <u>Dillinger</u> and should be sustained because Commerce used NEXTEEL's actual costs for non-prime products, as it was required

to.  Def. Br. at 4–6.  For the following reasons, the court sustains Commerce's <u>Second</u> <u>Remand Results</u>.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c) (2018), which grant the court authority to review actions contesting the final determination in an administrative review of an ADD order.  The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'"  <u>Xinjiamei Furniture (Zhangzhou) Co. v.</u> <u>United States</u>, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting <u>Nakornthai</u> <u>Strip Mill Public Co. v. United States</u>, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

Commerce's decision to rely on NEXTEEL's actual costs for non-prime product as reflected in NEXTEEL's books and records is supported by substantial evidence and in accordance with law.  As set forth in <u>Husteel II</u>, the Court of Appeals interpreted 19 U.S.C. § 1677b(f)(1)(A) to require Commerce to use actual costs for non-prime products when calculating constructed value.  <u>Husteel II</u>, 45 CIT at __, 520 F. Supp. 3d at 1308–09; <u>see also</u> <u>Dillinger</u>, 981 F.3d at 1321–24.  If Commerce decides not to rely on the costs reported in a respondent's books and records, Commerce must

explain why those reported costs do not reasonably reflect the respondent's actual

costs.    See Dillinger, 981 F.3d at 1324.    On remand, Commerce found that

NEXTEEL's books and records reflected NEXTEEL's actual costs for non-prime

products. Second Remand Results at 5.  In reaching this conclusion, Commerce notes

that "NEXTEEL does not separately classify prime and non-prime products, nor does

it value these products differently for inventory purposes, but rather assigns them

full cost." Id. (footnotes omitted).  Therefore, Commerce's decision to use those costs

in its calculation of NEXTEEL's constructed value comports with Dillinger.    See

Dillinger, 981 F.3d at 1324.

Section 1677b of Title 19 of the U.S. Code provides the framework that

Commerce must follow when calculating constructed value in an antidumping

investigation or review.    19 U.S.C. § 1677b(e)–(f).    The statute provides that

constructed value shall be calculated by adding three categories of costs and

expenses: (i) the cost of materials and fabrication or other processing; (ii) selling,

general, and administrative expenses and profits; and (iii) the cost of containers,

coverings, and other expenses incurred to prepare the merchandise for shipment. Id.

§ 1677b(e).  The statute further provides that

> Costs shall normally be calculated based on the records of the exporter
> or producer of the merchandise, if such records are kept in accordance
> with the generally accepted accounting principles [("GAAP")] of the
> exporting country (or the producing country, where appropriate) and
> reasonably reflect the costs associated with the production and sale of
> the merchandise.

Id. § 1677b(f)(1)(A).  The Court of Appeals stated that "Section 1677b(f)(1)(A) thus requires that reported costs must normally be used only if (1) they are based on the records . . . kept in accordance with the GAAP and (2) reasonably reflect the costs of producing and selling the merchandise." Dillinger, 981 F.3d at 1321 (quoting Thai Plastic Bags Indus. Co. v. United States, 746 F.3d 1358, 1365 (Fed. Cir. 2014)) (internal quotation marks and bracketing omitted) (emphasis in original).

In Dillinger, the Court of Appeals held that Commerce's calculation must reasonably reflect a respondent's actual costs, whether or not the respondent's books and records reasonably reflect such costs.  981 F.3d at 1321–23.  Specifically, the Dillinger court held that Commerce was not permitted to use a respondent's costs as reflected in its books and records because those reported costs did not reasonably reflect the respondent's actual costs, even though the respondent kept its books and records in accordance with GAAP.  Id. at 1324.  The producer in Dillinger reported its costs for non-prime products based on their sales value; however, the parties did not dispute that the cost to bring non-prime products to market was the same as the cost to bring prime products to market, despite the lesser sales value for non-prime products.  Id. at 1321.  Therefore, the Court of Appeals held that Commerce was not permitted to rely on those books and records.  Id. at 1324.

The Court of Appeals' explanation of Commerce's obligations when calculating costs to be used in constructed value applies here.  Although the respondent in Dillinger reported in its books and records adjusted costs of non-prime products based

Consol. Court No. 19-00112                                          Page 10

on their likely sale value, while NEXTEEL reported the actual costs of non-prime products in its books and records, the principle that Commerce must rely on actual costs remains the same.  See Dillinger, 981 F.3d at 1321; Second Remand Results at 5.  In the Final Results and the First Remand Results, Commerce adjusted NEXTEEL's reported costs for non-prime products based on the estimated sale value of such products, which is the same type of adjustment to actual costs that the Court of Appeals found to be unlawful in Dillinger.  Final Decision Memo at 42–43; First Remand Results at 9–13, 33–36; Dillinger, 981 F.3d at 1324.

     As the Court of Appeals stated in Dillinger and Thai Plastic Bags, Commerce will "normally" use a respondent's books and records only if two conditions are met: First, the books and records are kept in accordance with GAAP in the exporting or producing country; and second, that the books and records reasonably reflect the actual costs of producing and selling the merchandise.  Dillinger, 981 F.3d at 1321; Thai Plastic Bags, 746 F.3d at 1365.  In Dillinger, the Court of Appeals held that the respondent's books and records failed to meet the second condition as they did not reasonably reflect the actual costs of producing and selling non-prime products. Dillinger, 981 F.3d at 1321.  Here, on the other hand, Commerce concludes that NEXTEEL's books and records meet both conditions, as they are kept in accordance

Consol. Court No. 19-00112                                           Page 11

with GAAP in Korea,[3] and they reasonably reflect NEXTEEL's actual costs of producing and selling non-prime products. Second Remand Results at 5. Therefore, Commerce's decision to rely on NEXTEEL's reported costs in its books and records in the Second Remand Results is in accordance with law.[4]

Moreover, Commerce's determination to rely on the costs reported in NEXTEEL's books and records is supported by substantial evidence. As discussed, Commerce normally relies on a respondent's books and records on the conditions that (i) the books and records are kept in accordance with GAAP in the exporting or producing country; and (ii) the books and records reasonably reflect the respondent's actual costs in producing and selling the merchandise. See 19 U.S.C. § 1677b(f)(1)(A); Dillinger. 981 F.3d at 1321–24. Commerce's determinations that the costs reported in NEXTEEL's books and records meet those conditions are supported by substantial evidence.

---

[3] It is reasonably discernible from Commerce's discussion of NEXTEEL's accounting practices that Commerce determined that NEXTEEL's books and records were kept in accordance with GAAP in Korea, and no party contends that NEXTEEL's books and records are not kept in accordance with GAAP in Korea. See Second Remand Results at 5; Pl. Br.; Def. Br.; Tenaris Br.; see also First Remand Results at 8–10.

[4] Tenaris USA argues that in the Final Results and the First Remand Results Commerce correctly adjusted the costs reported in NEXTEEL's books and records to reflect the sale value of non-prime product. Tenaris Br. at 9. However, Commerce is required to use actual costs, regardless of the price at which the merchandise ultimately sells. See 19 U.S.C. § 1677b(f)(1)(A); Dillinger. 981 F.3d at 1321–24. Tenaris USA fails to explain how the sales price better reflects NEXTEEL's actual costs in producing and selling non-prime products than the reported costs in NEXTEEL's books and records, or, more importantly, why it is unreasonable for Commerce to rely on NEXTEEL's reported costs.

First, Commerce's determination that NEXTEEL's books and records were kept in accordance with GAAP in Korea is supported by substantial evidence because NEXTEEL reported that it maintains its books and records in accordance with GAAP in Korea and provided documentation in support of that claim. See Verification of the Cost Response of [NEXTEEL] in the [ADD] Admin. Review of [WLP] from [Korea], 4 and CVE-3 at 1–4, Dec. 11, 2018, PD 260, CD 316, Bar Codes 3782740-01, 3782739-01 ("Cost Verification Memo").[5]  Tenaris USA does not argue or point to any evidence that NEXTEEL's books and records are not kept in accordance with GAAP in Korea. Therefore, Commerce reasonably concluded based on record evidence that NEXTEEL's books and records are kept in accordance with GAAP in Korea. See Second Remand Results at 5; Cost Verification Memo at 4, CVE-3 at 1–4.

Second, Commerce's conclusion that NEXTEEL's books and records reasonably reflect NEXTEEL's actual costs is supported by substantial evidence. Commerce determined that "NEXTEEL does not separately classify prime and non-prime products, nor does it value these products differently for inventory purposes, but rather assigns them full cost." Second Remand Results at 5 (citing NEXTEEL's First Supplemental Section D Questionnaire Resp., 6, July 3, 2018, PD 119, CD 114, Bar

---

[5] On August 22, 2019, Defendant filed indices to the public and confidential administrative records underlying Commerce's Final Results, on the docket, at ECF Nos. 36-1–2. Citations to administrative record documents in this opinion are to the numbers Commerce assigned to such documents in the indices. All references in this opinion to documents from the administrative record are preceded by "PD" or "CD" to denote public or confidential documents.

Consol. Court No. 19-00112                                         Page 13

Codes 3726679-01, 3726646-01 ("Supp. Section D Resp."), and Cost Verification Memo

at 2).  Commerce concluded that "NEXTEEL's reported costs reflect the actual costs

of producing its non-prime products."  Id.

Tenaris USA argues that Commerce does not rely on any record evidence in

support of its determination that NEXTEEL's books and records reasonably reflect

its actual costs, see Tenaris Br. at 10; however, that argument is incorrect.  Commerce

relies on NEXTEEL's Supplemental Section D Response and the Cost Verification

Memo, each of which include exhibits with NEXTEEL's accounting of its costs for

both non-prime and prime products.  See Second Remand Results at 5; Supp. Section

D Resp. at 6, Ex. SD-11-A; Cost Verification Memo at 2, 4, and CVE-3 at 1–4.

Commerce analyzes the record evidence that demonstrates that NEXTEEL assigns

prime and non-prime products "full cost," and concludes that by assigning non-prime

products their full cost, NEXTEEL's books and records reasonably reflect its actual

costs in producing and selling non-prime products.  Second Remand Results at 5.

Other than incorrectly arguing that Commerce does not rely on any record evidence

in support of its conclusion, Tenaris USA does not make any other argument or point

to any record evidence to demonstrate that the "full cost" reported in NEXTEEL's

books and records does not reasonably reflect "actual cost" as required by the statute.

Consol. Court No. 19-00112                                              Page 14

Indeed, Tenaris USA contends that Commerce should have stood by Commerce's original determination that "assigning full costs to [non-prime] products does not reasonably reflect the costs associated with the production and sale of the merchandise." Tenaris Br. at 7 (quoting Final Decision Memo at 43). Tenaris USA relies on Commerce's explanation in the <u>Final Results</u> and the <u>First Remand Results</u> that NEXTEEL could not sell non-prime products for a price high enough to recover the cost of producing and selling the products. <u>Id.</u> at 6 (citing Final Decision Memo at 42 and <u>First Remand Results</u> at 10). Nonetheless, neither Commerce in its Final Decision Memo or <u>First Remand Results</u> nor Tenaris USA explain the relevance of the sales price to Commerce's obligation to use the actual costs of production and sales. <u>See</u> Final Decision Memo at 42–43; <u>First Remand Results</u> at 9–13; Tenaris Br. at 6–7; <u>see also</u> 19 U.S.C. § 1677b(f)(1)(A). Moreover, even if Commerce had offered some explanation for using the sales value to reduce NEXTEEL's actual costs, the issue before the court is whether Commerce's determination in the <u>Second Remand Results</u> to use NEXTEEL's reported costs, not Commerce's prior determination, is in accordance with law and supported by substantial evidence. Tenaris USA's arguments regarding the reasonableness of Commerce's prior determinations are not relevant, and, in any event, insufficient. Commerce's determination that NEXTEEL's full costs of production and sale of non-prime products as reflected in NEXTEEL's books and records is supported by substantial evidence.

Consol. Court No. 19-00112                                          Page 15

## CONCLUSION

For the foregoing reasons, Commerce's <u>Second Remand Results</u> are sustained.

Judgment for Defendant will enter accordingly.


<u>  /s/ Claire R. Kelly  </u>
Claire R. Kelly, Judge

Dated:          January 3, 2022
                New York, New York